JUDGE COTE

COZEN O'CONNOR
Guy A. Bell, Esquire (GB-1217)
45 Broadway, 16th Floor
New York, New York 10006
Attorneys for Plaintiffs

09   CV   4328

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL A. CARTER and<br>MEREDITH CARTER<br>77 East Walton Street<br>Apt. 25D<br>Chicago, Illinois 60611<br><br>Plaintiffs<br><br>v.<br><br>36 HUDSON ASSOCIATES, LLC<br>412 Broadway, 4th Floor<br>New York, New York 10013<br><br>and<br><br>JOSEPH PELL LOMBARDI &<br>ASSOCIATES, ARCHITECTS<br>412 Broadway, 4th Floor<br>New York, New York 10013<br><br>and<br><br>JOSEPH PELL LOMBARDI<br>412 Broadway, 4th Floor<br>New York, New York 10013<br><br>and<br><br>TRIBECA 22 INVESTMENT LTD.<br>412 Broadway, 4th Floor<br>New York, New York 10013<br><br>and | CIVIL ACTION NO.:<br><br><br><br>**COMPLAINT**<br><br><br><br>**JURY TRIAL DEMANDED** |



RECEIVED
MAY - 4 2009
U.S.D.C. S.D.N.Y.
CASHIERS

SERVET HARUNOGLU                          :
Istanbul, Turkey                          :
                                          :
and                                       :
                                          :
ONURHAN HOMRIS                            :
Istanbul, Turkey                          :
                                          :
and                                       :
                                          :
ADG ARCHITECTURE & DESIGN, P.C.           :
106 East 19th Street, 4th Floor           :
New York, New York 10003                  :
                                          :
and                                       :
                                          :
FBR Construction Group, LLC               :
810 Seventh Avenue, 28th Floor              :
New York, New York 10019                  :
                                          :
               Defendants                 :

---

## I.    PARTIES

1.      Plaintiffs, Michael Carter and Meredith Carter (hereinafter "the Carters" or "plaintiffs") are adult individuals who currently reside at 77 East Walton Street, Apt. 25D, Chicago, Illinois.

2.      Defendant, 36 Hudson Associates, LLC, (hereinafter "36 Hudson Associates") is a limited liability company organized under the laws of the State of New York, with a principal place of business located at 412 Broadway, 4th Floor, New York, New York.

3.      Defendant, Joseph Pell Lombardi & Associates, Architects (hereinafter "Lombardi Associates") is, upon information and belief, a professional corporation or partnership organized under the laws of the State of New York, with a principal place of business located at 412 Broadway, 4th Floor, New York, New York.

4.      Defendant, Joseph Pell Lombardi, (hereinafter "Lombardi") is an adult individual who currently resides in New York, New York.  At all times material hereto, "Lombardi" was a principal of both "36 Hudson Associates" and "Lombardi Associates".

5.      Defendant, Tribeca 22 Investment Ltd. (hereinafter "Tribeca 22 Investment") is, upon information and belief, a limited liability company organized under the laws of the State of New York, with a principal place of business located at 412 Broadway, 4th Floor, New York, New York.  At all times material hereto, Tribeca 22 Investment was a principal of 36 Hudson Associates.

6.      Defendant, Servet Harunoglu (hereinafter "Harunoglu") is an adult individual who, upon information and belief, currently resides in Istanbul, Turkey.  At all times material hereto, Harunoglu was a principal of "Tribeca 22 Investment" and "36 Hudson Associates".

7.      Defendant, Onurhan Homris (hereinafter "Homris") is an adult individual who, upon information and belief, currently resides in Istanbul, Turkey.  At all times material hereto, Homris was a principal of "Tribeca 22 Investment" and "36 Hudson Associates".

8.      Defendant, ADG Architecture & Design, P.C. (hereinafter "ADG Architecture") is a professional corporation organized under the laws of the State of New York, with a principal place of business located at 106 East 19th Street, New York, New York.

9.      Defendant FBR Construction Group, LLC (hereinafter "FBR Construction") is a limited liability company organized under the laws of the State of New York, with a principal place of business located at 810 Seventh Avenue, 28th Floor, New York, New York.

## II.   JURISDICTION

10.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1332, as plaintiff and defendants are citizens of different states and the amount in controversy exceeds the sum of seventy-five thousand dollars ($75,000), exclusive of interest and costs.

11.     Venue is properly made in this district pursuant to 28 U.S.C. §1391.

## III.   FACTUAL ALLEGATIONS

12.     On or about April 17, 2003, defendant 36 Hudson Associates purchased a seven story loft building located at 36-38 Hudson Street, New York, New York, and an adjacent four story store and loft building located at 161 Duane Street, New York, New York (hereinafter referred to collectively as "the Building" or the "Mohawk Atelier Building").

13.     Subsequent to the purchase of the Building, defendant 36 Hudson Associates began renovating the same for residential and commercial use.

14.     The plans and specifications for the renovation of the Building and units (hereinafter the "plans and specifications") were prepared by defendant Lombardi, in his capacity as an architect and principal of Lombardi Associates.  Lombardi and Lombardi Associates certified that the plans and specifications for the renovation of the Building complied with all applicable codes, including the Building and Administrative Codes of the City of New York.

15.     On or about July 9, 2004, defendant 36 Hudson Associates and its principals, as Sponsors, filed with the New York State Department of Law an Offering Plan for condominium

ownership of twelve (12) contemplated residential units and two (2) contemplated commercial units within the Building (hereinafter "the Offering Plan").

16.    Pursuant to the Offering Plan, defendant 36 Hudson Associates and its principals:

    a.    assumed the obligation to take all necessary steps to complete the renovation of the building and condominium units in accordance with the plans and specifications, and with a quality of construction comparable to currently prevailing local standards;

    b.    represented that the plans and specifications complied with all applicable codes, including the Building and Administrative Codes of the State of New York;

    c.    represented that they would undertake all efforts necessary to obtain a Certificate of Occupancy or Temporary Certificate of Occupancy prior to the first closing of a residential unit within the condominium, and to obtain a Permanent Certificate of Occupancy for the Building prior to the final expiration of any Temporary Certificate of Occupancy obtained for the Building;

    d.    represented and expressly acknowledged that any Temporary Certificate of Occupancy for the Building could not be renewed beyond two (2) years from the date of its original issuance, and that a failure by 36 Hudson Associates and its principals to obtain a Permanent Certificate of Occupancy prior to that date would cause continued residential occupancy of the premises to be in violation of the Multiple Dwelling Law, subjecting the Unit owners and residents of the Building to eviction and other penalties;

    e.    represented that funds sufficient to complete all work necessary to obtain a Permanent Certificate of Occupancy would be held in escrow until the issuance of a Permanent Certificate of Occupancy;

    f.    jointly and severally certified that "the offering plan does, and that the documents submitted hereafter by us which amend or supplement the offering plan will:"

        a)    set forth the detailed terms of the transaction and be complete, current and accurate;

        b)    afford potential investors, purchasers and participants an adequate basis upon which to found their judgment;

        c)    not omit any material fact;

d)      not contain any untrue statements of material fact;

e)      not contain any fraud, deception, concealment, suppression, false pretense or fictitious or pretended purchase or sale;

f)      not contain any promise or representation as to the future which is beyond reasonable expectation or unwarranted by existing circumstances;

g)      not contain any representation or statement which is false, where they:

    (1)      knew the truth;

    (2)      with reasonable effort could have known the truth;

    (3)      made no reasonable effort to ascertain the truth; or

    (4)      did not have knowledge concerning the representation or statement made.

17.      In connection with the Offering Plan, 36 Hudson Associates retained defendant ADG Architecture to review the plans and specifications prepared by defendants Lombardi and Lombardi Associates, and to conduct an inspection of the existing portions of the renovated property as of December 15, 2003.

18.      On the basis of its review of the building plans and specifications and visual inspection of the existing portion of the renovated property, ADG Architecture and Design submitted a Certification and Report in support of the Offering Plan pursuant to Section 23.4 of Article 23A of the General Business Law.

19.      Upon information and belief, defendant 36 Hudson Associates retained defendant FBR Construction to serve as general contractor for the renovations of the Mohawk Atelier Building.

20.     In reliance on the statements, representations and promises contained within the Offering Plan, the Carters entered into an agreement with 36 Hudson Associates on December 23, 2004, (hereinafter "the Purchase Agreement") for the purchase of a residential condominium unit within the Mohawk Atelier Building, designated as Unit 4A.

21.     Again relying on the statements, representations and promises contained within the Offering Plan, the Carters closed on the purchase of Unit 4A on May 4, 2007, and began residing in Unit 4A shortly thereafter.

22.     Subsequent to the date on which the Carters closed on Unit 4A and began residing in same, they and other residents of the Mohawk Atelier Building began to discover pervasive construction defects throughout the Building and individual Units, as well as material deviations from the governing plans and specifications.

23.     In response to the discovery of the construction defects and deviations referenced above, the Board of Managers of the Mohawk Atelier Condominium (hereinafter the "Board") initiated a limited review of certain of the construction defects and deviations, and the impact of those defects and deviations on the condition of the Building.

24.     As a result of their limited review of conditions within the Building, the engineers retained by the Board identified extensive construction defects and deviations throughout the Building, to include pervasive mold growth resulting from substandard construction and the use of improper materials.

25.     Remediation of the construction defects and deviations referenced above required all of the owners and occupants of residences in the Mohawk Atelier Building to move out of their residences, in many cases for more than a year, and remains ongoing to this date.

26.     In relation to the Board's limited review of certain of the construction defects and deviations in the Building, the Carters raised with the Board concerns that the stairwell between the upper and lower floors of their apartment had not been constructed in accordance with the governing plans and specifications, as well as concerns that certain of the individual stairs were too shallow.

27.     Despite the Carters' expressed concerns regarding potential construction deviations relating to the stairwell within their Unit, the Board refused to include an evaluation of the Carters' stairwell within the final scope of the review it commissioned, or to address the Carters' concerns regarding the stairwell in subsequent negotiations with defendants 36 Hudson Associates, Lombardi Associates and Lombardi regarding remediation of construction defects in the property.

28.     As a result of the Board's refusal to include an evaluation of potential construction defects and deviations associated with the Carters' stairwell within the scope of its review, the Carters independently retained licensed professionals to conduct a review of the conditions within their particular Unit, for the purposes of identifying any construction deviations and defects unique to their Unit.

29.     As a result of their independent evaluation of construction conditions within the Carters' Unit, the professionals retained by the Carters identified extensive construction defects and deviations within the Carters' Unit.  Of particular note, the Carters' architects and

consultants concluded that the stairwell connecting the upper and lower floors within the Carters'

Unit violated numerous provisions of the Building Code, including code provisions directed at

protecting human life and safety in the event of a fire or other catastrophe, and that the design

and construction of that Unit therefore presented a danger to anyone occupying the Unit.

30.     The code violations identified by the Carters' architects and consultants in

relation to the design and construction of the stairwell connecting the upper and lower floors of

the Carters' Unit included, but are not limited to, the following:

a.      the stairwell is the only means of egress from the lower floor of the Unit,
        in violation of applicable code provisions requiring two separate means of
        egress from each floor;

b.      the staircase "as built" is thirty inches (30) wide, in violation of applicable
        code provisions requiring that egress stairs be at least thirty-six (36) inches
        wide;

c.      the stairwell contains winders, in violation of applicable code provisions
        precluding the inclusion of winders in egress stairs; and

d.      the height of the risers incorporated into the stairs exceeds the maximum
        permissible riser height under applicable code provisions.

31.     Upon discovery of the aforementioned construction defects and code violations,

the Carters promptly notified defendants 36 Hudson Associates, Lombardi and Lombardi

Associates of same, and requested that those defendants request that the Building Department

inspect the Carters' Unit to determine whether the design and construction of the stairwell was in

compliance with governing codes and regulations and safe for occupants of the Unit.

32.     Despite the Carters' request, defendants 36 Hudson Associates, Lombardi and

Lombardi Associates refused to request a review and inspection of the stairwell by the Building

Department.

33.     In light of the refusal by 36 Hudson Associates, Lombardi and Lombardi Associates to request that the Building Department conduct an inspection of the stairwell to determine whether it was in compliance with relevant codes and regulations and safe for occupants of the Unit, the Carters submitted their own request for such a review to the Building Department.

34.     At some point subsequent to the submission of the Carters' request to the Building Department, an official from the Building Department did in fact conduct an inspection of the Building and individual units, as well as the architectural plans and specifications submitted by 36 Hudson Associates, Lombardi and Lombardi Associates in order to obtain approvals and permits for the renovations at the Building.

35.     Upon information and belief, the Building Department identified pervasive construction defects and code violations at the Building, including code violations associated with the stairwell in the Carters' Unit, as a result of its inspection of the Building and review of the submitted plans and specifications.

36.     On or about January 2, 2009, the Building Department issued a Letter of Intent to Revoke the Approvals and Permits issued in connection with the Mohawk Atelier Building to Lombardi and Lombardi Associates, based on extensive code violations identified during the Building's Department's site inspection and review of the plans and specifications, and misrepresentations of fact contained in the underlying applications submitted to the Building Department.

37.     Among a litany of other code violations, the Building Department's Letter of Intent to Revoke states that the Carter's Unit was not designed and constructed in accordance

with governing code provisions, insofar as only one means of egress was provided from the lower floor of the Unit, thus confirming the findings of the Carters' independent architects.

38.     Subsequent to the issuance of the Building Department's Letter of Intent to Revoke, the Temporary Certificate of Occupancy for the Mohawk Atelier Building expired, and the two year outside deadline for renewal of the Temporary Certificate of Occupancy has passed.

39.     To this date, 36 Hudson Associates and its principals have not obtained a Permanent Certificate of Occupancy for the Mohawk Atelier Building.

40.     Upon information and belief, it will be impossible for 36 Hudson Associates and its principals to obtain a Permanent Certificate of Occupancy for the Mohawk Atelier Building and/or Unit 4A in their present conditions, given the pervasive code violations and construction defects identified by the Building Department during the course of its review.

41.     In order to bring the Carters' Unit into compliance with applicable codes and regulations, substantial renovations and reconstruction of the Unit would need to be undertaken, to include the incorporation of a second means of egress from the lower floor of the Unit.

42.     The renovations and reconstruction needed to bring the Carters' Unit into compliance with applicable codes and regulations cannot be accomplished without destroying the unique character of the Unit and materially altering the conditions within the Unit from those presented in the Offering Plan, and would likely also adversely impact other Units within the Mohawk Atelier Building.

43.     As a result of the construction defects and code violations described above, the Carters have been unable to use or rent their Unit since approximately May of 2008, and the Carters have as a result suffered significant damages from that time to the present.

44.     As a result of the code violations and construction defects associated with their Unit, the Carters cannot use, rent or sell their Unit, thus rendering the Unit effectively worthless.

45.     The damages and injuries described above are the direct and foreseeable result of the conduct of the defendants, as described with greater particularity herein.

### COUNT I – COMMON LAW FRAUD

**Michael Carter and Meredith Carter v. Lombardi, 36 Hudson Associates, and Lombardi Associates**

46.     Plaintiffs incorporate by reference the allegations of the preceding paragraphs.

47.     Defendant Lombardi is a licensed architect, who has been involved in the planning, renovation, design and development of numerous residential and commercial properties within the City of New York.

48.     As a result of his professional training and experience in relation to the planning renovation, design, and development of residential and commercial properties in the City of New York, defendant Lombardi is intimately familiar with the provisions of governing codes, including the provisions of the New York Building and Administrative Codes.

49.     By virtue of his intimate familiarity with the provisions of the New York Building and Administrative Codes, defendant Lombardi was expressly aware, at the time of the preparation of the plans and specifications for the renovation of the Mohawk Atelier Building and at the time of the filing of the Offering Plan and amendments thereto, that the upper and

lower levels of Unit 4A contemplated by the plans and specifications constituted separate floors within the meaning of the codes.

50.     By virtue of his intimate familiarity with the provisions of the New York Building and Administrative Codes and extensive experience in planning, designing, renovating and developing residential properties in the City of New York, defendant Lombardi was expressly aware, at the time he prepared the plans and specifications for the Mohawk Atelier Building and at the time of the filing of the Offering Plan and amendments thereto, that governing codes require that two separate means of egress be provided for every floor in a residential building, in order to protect the life and safety of occupants in the event of a fire or other catastrophe.

51.     By virtue of his intimate familiarity with the provisions of the New York Building and Administrative Codes and extensive experience in planning, designing, renovating and developing residential properties in the City of New York, defendant Lombardi was expressly aware, at the time he prepared the plans and specifications for the Mohawk Atelier Building and at the time of the filing of the Offering Plan and amendments thereto, that egress stairs may not contain winders.

52.     As defendant Lombardi was a principal of both 36 Hudson Associates and Lombardi Associates at all times material hereto, his knowledge is imputable to those defendants.

53.     By virtue of the knowledge possessed by defendants Lombardi, 36 Hudson Associates and Lombardi Associates, as outlined above, the representations by those defendants in the Offering Plan that the design and specifications for Unit 4A in the Mohawk Atelier

Building complied with all relevant codes and regulations constitute fraudulent and material misrepresentations of fact.

54.     Plaintiffs expressly relied upon the representations by the defendants that the design and specifications of Unit 4A in the Mohawk Atelier Building complied with all applicable codes and regulations in relation to their decision to purchase Unit 4A.

55.     Plaintiffs further relied on the representations by defendants that they would take all steps necessary to obtain a Permanent Certificate of Occupancy, and hold sufficient funds in escrow to complete any work necessary to obtain a Permanent Certificate of Occupancy, in relation to their decision to purchase Unit 4A.

56.     As a direct and proximate result of the fraudulent and material misrepresentations by defendants Lombardi, 36 Hudson Associates and Lombardi Associates in the plans and specifications and Offering Plan and amendments thereto, plaintiffs were induced to purchase Unit 4A in the Mohawk Atelier Building.

57.     As a direct and proximate result of the fraudulent and material misrepresentations by defendants Lombardi, 36 Hudson Associates and Lombardi Associates, as described above, plaintiffs have suffered severe damages, including, without limitation, the expenditure of two million eight hundred thousand dollars ($2,800,000) for the purchase of Unit 4A, closing costs and taxes, carrying costs and other expenses associated with owning Unit 4A while the Unit was uninhabitable, additional sums to retain qualified architects and consultants to evaluate the design and construction defects in Unit 4A, and attorneys' fees.

WHEREFORE, plaintiffs demand judgment, jointly and severally, against defendants Lombardi, 36 Hudson Associates and Lombardi Associates, for compensatory damages, punitive damages, delay damages, interest, costs of suit, attorneys' fees, and such other and further relief as the Court may deem appropriate under the circumstances.

## COUNT II – RESCISSION

### Michael Carter and Meredith Carter v. 36 Hudson Associates, 22 Tribeca Investments, Lombardi, Harunoglu, and Homris

58.     Plaintiffs incorporate by reference the allegations of the preceding paragraphs.

59.     As described in further detail above, plaintiffs were induced by the fraudulent and material misrepresentations of defendants Lombardi, 36 Hudson Associates and Lombardi Associates, to purchase Unit 4A within the Mohawk Atelier Building.

60.     Plaintiffs' payments pursuant to the Purchase Agreement were based on the consideration that Lombardi and 36 Hudson Associates would deliver a code compliant and habitable residential condominium built to prevailing industry standards, and would take all necessary steps to obtain a Permanent Certificate of Occupancy for the Building prior to any expiration of any Temporary Certificate of Occupancy.

61.     Because the design and construction of Unit 4A materially violate the provisions of governing codes, thus rendering Unit 4A dangerous to any occupant and uninhabitable, there is a complete failure of consideration for the amounts paid by plaintiffs pursuant to the Purchase Agreement.

62.     The renovations and reconstruction necessary to bring Unit 4A into compliance with governing codes and regulations would destroy the unique character of that residential

property and materially alter the conditions within the Unit from those presented in the Offering Plan, and would likely also adversely impact other Units within the Mohawk Atelier Building.

63.     The fraudulent and material misrepresentations described above, and complete failure of consideration for the payments made pursuant to the Purchase Agreement, require rescission of the Purchase Agreement and resulting transfer of Unit 4A, as there exists no adequate remedy for plaintiffs at law.

WHEREFORE, plaintiffs demand judgment in their favor and against defendants for rescission of the Purchase Agreement and resulting transfer of Unit 4A, and the return to plaintiffs of all sums expended by plaintiffs in relation to the purchase of Unit 4A, together with delay damages, interest, costs of suit, attorneys' fees, and such other and further relief as the Court may deem appropriate under the circumstances.

### COUNT III – UNJUST ENRICHMENT

**Michael Carter and Meredith Carter v. 36 Hudson Associates, 22 Tribeca Investments, Lombardi, Harunoglu, and Homris**

64.     Plaintiffs incorporate by reference the allegations of the preceding paragraphs.

65.     As discussed in greater detail above, the Carters made payments to 36 Hudson Associates in the amount of $2,800,000 pursuant to the Purchase Agreement.

66.     Upon information and belief, 36 Hudson Associates distributed the proceeds from the sale of Unit 4A to its principals and investors, including defendants Lombardi, 22 Tribeca Investments, Harunoglu and Homris.

67.     Given the fraudulent and material misrepresentations which induced the Carters to purchase Unit 4A, the complete failure of consideration for the Carters' payments pursuant to the

Purchase Agreement, and the uninhabitable and dangerous condition of Unit 4A, defendants 36 Hudson Associates, Lombardi, 22 Tribeca Investments, Harunoglu and Homris have been unjustly enriched by the sale of Unit 4A to the Carters.

68.    Under the foregoing circumstances, equity demands that defendants 36 Hudson Associates, Lombardi, 22 Tribeca Investments, Harunoglu and Homris return all funds paid by the Carters pursuant to the Purchase Agreement.

WHEREFORE, plaintiffs demand judgment in their favor and against defendants for return of all amounts paid by plaintiffs pursuant to the Purchase Agreement for Unit 4A, together with delay damages, interest, costs of suit, attorneys' fees, and such other and further relief as the Court may deem appropriate under the circumstances.

### COUNT IV - PROFESSIONAL NEGLIGENCE

**Michael Carter and Meredith Carter v. Lombardi and Lombardi Associates**

69.    Plaintiffs incorporate by reference the allegations of the preceding paragraphs.

70.    As a result of the Code violations and inherent dangers presented by the design of the Mohawk Atelier Building and Unit 4A, plaintiffs have suffered severe damages, as more fully described above.

71.    The damages suffered by plaintiffs are the direct and proximate result of the negligence, carelessness, and/or negligent acts and/or omissions of defendants Lombardi and Lombardi Associates, in:

a.    failing to design the Mohawk Atelier Building and Unit 4A in conformity with governing codes and regulations;

b.    failing to provide two means of egress from the lower floor of Unit 4A in the design plans and specifications for the Mohawk Atelier Building;

17

c.   failing to design the single means of egress from the lower floor Unit 4A in conformity with applicable codes and standards;

d.   providing a design for Unit 4A that rendered that residence uninhabitable and dangerous to human life and safety;

e.   failing to fulfill their obligations pursuant to the Offering Plan and Purchase Agreement to take all necessary steps to ensure that the Mohawk Atelier Building and Unit 4A were constructed in accordance with governing codes and standards and with a quality consistent with prevailing local standards;

f.   failing to properly and adequately supervise the contractors and subcontractors retained to renovate the Mohawk Atelier Building and Unit 4A;

g.   causing or allowing the Mohawk Atelier Building and Unit 4A to be built in a substandard manner and with improper materials, with resulting mold growth throughout the Mohawk Atelier Building and Unit 4A; and

h.   failing to ensure that the Mohawk Atelier Building and Unit 4A were constructed in accordance with the plans and specifications.

72.   As a result of the foregoing negligence, and negligent acts and/or omissions of defendants Lombardi and Lombardi Associates, plaintiffs have suffered severe damages, as more fully described above.

WHEREFORE, plaintiffs demand judgment against defendants Lombardi and Lombardi Associates, jointly and severally, for compensatory damages, delay damages, interest, costs of suit, attorneys' fees, and such other and further relief as the Court may deem appropriate under the circumstances.

## COUNT V – BREACH OF CONTRACT

**Michael and Meredith Carter v. 36 Hudson Associates, Lombardi, 22 Tribeca Investments, Harunoglu and Homris**

73.   Plaintiffs incorporate by reference the allegations of the preceding paragraphs.

74.     Defendants 36 Hudson Associates, Lombardi, 22 Tribeca Investments, Harunoglu and Homris breached their contractual obligations to plaintiffs pursuant to the Offering Plan and Purchase Agreement in:

      a.    failing to deliver Unit 4A in a condition that complied with all applicable codes and regulations;

      b.    delivering Unit 4A in a condition that rendered that residence uninhabitable and dangerous to human life and safety;

      c.    failing to take all necessary steps to ensure that the Mohawk Atelier Building and Unit 4A were constructed in accordance with governing codes and standards and with a quality consistent with prevailing local standards;

      d.    failing to properly and adequately supervise the contractors and subcontractors retained to renovate the Mohawk Atelier Building and Unit 4A;

      e.    causing or allowing the Mohawk Atelier Building and Unit 4A to be built in a substandard manner and with improper materials, with resulting mold growth throughout the Mohawk Atelier Building and Unit 4A;

      f.    failing to hire competent and qualified contractors to construct the Mohawk Atelier Building and Unit 4A;

      g.    failing to ensure that the Mohawk Atelier Building and Unit 4A were constructed in accordance with the plans and specifications;

      h.    failing to take all steps necessary to obtain a Permanent Certificate of Occupancy for the Mohawk Atelier Building and Unit 4A prior to the expiration of the Temporary Certificate of Occupancy;

      i.    failing to obtain a Permanent Certificate of Occupancy to this date;

      j.    failing to maintain sufficient funds in escrow to complete all work necessary to obtain a Permanent Certificate of Occupancy; and

      k.    failing to undertake reasonable and necessary efforts to determine whether the design of Unit 4A complied with applicable codes and regulations.

75.     As a result of the aforementioned breaches of contract by defendants 36 Hudson Associates, Lombardi, 22 Tribeca Investments, Harunoglu and Homris, plaintiffs have suffered damages, as more fully described above.

WHEREFORE, plaintiffs demand judgment against defendants 36 Hudson Associates, Lombardi, 22 Tribeca Investments, Harunoglu and Homris, jointly and severally, for compensatory damages, delay damages, interest, costs of suit, attorneys' fees, and such other and further relief as the Court may deem appropriate under the circumstances.

### COUNT VI – NEGLIGENCE

### Michael Carter and Meredith Carter v. 36 Hudson Associates, Lombardi, 22 Tribeca Investments, Harunoglu and Homris

76.     Plaintiffs incorporate by reference the allegations of the preceding paragraphs.

77.     The damages suffered by plaintiffs, as more fully described above, are the direct and proximate result of the negligence, carelessness and/or negligent acts and/or omissions of defendants 36 Hudson Associates, Lombardi, 22 Tribeca Investments, Harunoglu and Homris, in:

    a.     failing to deliver Unit 4A in a condition that complied with all applicable codes and regulations;

    b.     delivering Unit 4A in a condition that rendered that residence uninhabitable and dangerous to human life and safety;

    c.     failing to take all necessary steps to ensure that the Mohawk Atelier Building and Unit 4A were constructed in accordance with governing codes and standards and with a quality consistent with prevailing local standards;

    d.     failing to properly and adequately supervise the contractors and subcontractors retained to renovate the Mohawk Atelier Building and Unit 4A;

e.      causing or allowing the Mohawk Atelier Building and Unit 4A to be built in a substandard manner and with improper materials, with resulting mold growth throughout the Mohawk Atelier Building and Unit 4A;

f.      failing to hire competent and qualified contractors to construct the Mohawk Atelier Building and Unit 4A;

g.      failing to ensure that the Mohawk Atelier Building and Unit 4A were constructed in accordance with the plans and specifications;

h.      failing to take all steps necessary to obtain a Permanent Certificate of Occupancy for the Mohawk Atelier Building and Unit 4A prior to the expiration of the Temporary Certificate of Occupancy;

i.      failing to obtain a Permanent Certificate of Occupancy to this date;

j.      failing to maintain sufficient funds in escrow to complete all work necessary to obtain a Permanent Certificate of Occupancy; and

k.      failing to undertake reasonable and necessary efforts to determine whether the design of Unit 4A complied with applicable codes and regulations.

78.     As a result of the foregoing negligence, and/or negligent acts and/or omissions of defendants 36 Hudson Associates, Lombardi, 22 Tribeca Investments, Harunoglu and Homris, plaintiffs have suffered severe damages, as more fully described above.

WHEREFORE, plaintiffs demand judgment against defendants 36 Hudson Associates, Lombardi, 22 Tribeca Investments, Harunoglu and Homris, jointly and severally, for compensatory damages, delay damages, interest, costs of suit, attorneys' fees, and such other and further relief as the Court may deem appropriate under the circumstances.

## COUNT VII – PROFESSIONAL NEGLIGENCE

### Michael and Meredith Carter v. ADG Architecture

79.     Plaintiffs incorporate by reference the allegations of the preceding paragraphs.

80.     As a result of the code violations and inherent dangers presented by the design of the Mohawk Atelier Building and Unit 4A, plaintiffs have suffered severe damages, as more fully described above.

81.     The damages suffered by plaintiffs are the direct and proximate result of the negligence, carelessness, and/or negligent acts and/or omissions of defendant ADG Architecture, in:

a.      failing to recognize and identify the code violations and dangers inherent in the design of Unit 4A;

b.      failing to determine during the course of its review of the plans and specifications for the Mohawk Atelier Building and Unit 4A, and site inspection of same, that the upper and lower levels of Unit 4A constituted separate floors;

c.      failing to recognize that governing codes and regulations required that two means of egress be provided from the lower floor of Unit 4A;

d.      certifying that the plans and specifications for the Mohawk Atelier Building and Offering Plan did not contain any misrepresentations of fact;

e.      failing to undertake reasonable and necessary efforts to determine whether the design for Unit 4A complied with all applicable codes and regulations;

f.      failing to conduct an adequate inspection of the Mohawk Atelier Building in connection with the certification and report it submitted in support of the Offering Plan; and

g.      failing to conduct an adequate review of the plans and specifications for the Mohawk Atelier Building and Unit 4A in connection with the certification and report it submitted in support of the Offering Plan.

82.     As a result of the foregoing negligence, and/or negligent acts and/or omissions of defendant ADG Architecture, plaintiffs have suffered severe damages, as more fully described above.

WHEREFORE, plaintiffs demand judgment against defendant ADG Architecture for compensatory damages, delay damages, interest, costs of suit, attorneys' fees, and such other and further relief as the Court may deem appropriate under the circumstances.

## COUNT VIII – NEGLIGENCE

### Michael Carter and Meredith Carter v. FBR Construction

83.    Plaintiffs incorporate by reference the allegations of the preceding paragraphs.

84.    As a result of the code violations and inherent dangers presented by the design of the Mohawk Atelier Building and Unit 4A, as well as the substandard construction of same, plaintiffs have suffered severe damages, as more fully described above.

85.    The damages suffered by plaintiffs are the direct and proximate result of the negligence, carelessness, and/or negligent acts and/or omissions of defendant FBR Construction, in:

a.    failing to take all necessary steps to ensure that the Mohawk Atelier Building and Unit 4A were constructed in accordance with governing codes and standards and with a quality consistent with prevailing local standards;

b.    failing to perform the renovations at the Mohawk Atelier Building and Unit 4A in a good and workmanlike manner, and in accordance with prevailing industry standards;

c.    failing to properly and adequately supervise the contractors and subcontractors retained to renovate the Mohawk Atelier Building and Unit 4A;

d.    causing or allowing the Mohawk Atelier Building and Unit 4A to be built in a substandard manner and with improper materials, with resulting mold growth throughout the Mohawk Atelier Building and Unit 4A;

e.    failing to hire competent and qualified subcontractors to construct the Mohawk Atelier Building and Unit 4A;

f.      failing to ensure that the Mohawk Atelier Building and Unit 4A were constructed in accordance with the plans and specifications;

g.      failing to recognize that the single means of egress provided from the lower floor of Unit 4A presented a danger to potential occupants of that residence;

h.      failing to recognize that two means of egress were required for the lower floor of Unit 4A;

i.      causing or allowing deviations from the plans and specifications during construction of the Mohawk Atelier Building and Unit 4A, without required approvals for same; and

j.      failing to recognize that actual site conditions rendered the plans and specifications for Unit 4A improper and unworkable.

WHEREFORE, plaintiffs demand judgment against defendant FBR Construction for compensatory damages, delay damages, interest, costs of suit, attorneys' fees, and such other and further relief as the Court may deem appropriate under the circumstances.

Dated: New York, New York
       May 4, 2009

                                 COZEN O'CONNOR

                                 GUY A. BELL, ESQUIRE (GB-1217)
                                 45 Broadway Atrium, 16th Floor
                                 New York, New York  10006
                                 Attorneys for Plaintiff
                                 (212) 509-9400

OF COUNSEL:

Sean P. Carter, Esquire
Cozen O'Connor
1900 Market Street
Philadelphia, Pennsylvania  19103
(215) 665-2105