UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
MICHAEL A. CARTER and MEREDITH CARTER,  :
                          Plaintiffs,   :
                                        :
             -v-                        :
                                        :
36 HUDSON ASSOCIATES, LLC, JOSEPH PELL  :
LOMBARDI & ASSOCIATES, ARCHITECTS,      :
JOSEPH PELL LOMBARDI, TRIBECA 22        :
INVESTMENT LTD., SERVET HARUNOGLU,      :
ONURHAN HOMRIS, and ADG ARCHITECTURE &  :
DESIGN, P.C.,                           :     09 Civ. 4328 (DLC)
                          Defendants.   :
----------------------------------------:     OPINION AND ORDER
                                        :
36 HUDSON ASSOCIATES, LLC,              :
                          Third-Party   :
                          Plaintiff,    :
                                        :
             -v-                        :
                                        :
FBR CONSTRUCTION GROUP LLC and JAY      :
FURMAN,                                 :
                          Third-Party   :
                          Defendants.   :
----------------------------------------X

Appearances:

For third-party plaintiff:
Thomas R. Newman
Fran M. Jacobs
Duane Morris LLP
1540 Broadway
New York, NY 10036

For third-party defendants:
Kenneth G. Roberts
James L. Simpson
Cozen O'Connor
250 Park Avenue
New York, NY 10177

DENISE COTE, District Judge:

In this construction dispute, the third-party defendants have requested that this Court abstain from exercising jurisdiction over the third-party action, or, in the alternative, decline to exercise supplemental jurisdiction over the third-party complaint.  They contend that related state court litigation arising from the construction of the Mohawk Atelier Condominium ("the Mohawk"), located in lower Manhattan, presents the exceptional circumstances justifying abstention. Their motion is denied.

BACKGROUND

The following facts are drawn from the complaint, the third-party complaint, documents integral to the complaints, information in the public record, and undisputed facts presented by the parties in connection with this motion practice.  36 Hudson Associates, LLC ("Hudson") is the sponsor/developer of the Mohawk, a commercial and residential building.  On August 26, 2004, Hudson retained FBR Construction Group LLC ("FBR Construction") as the construction manager for the Mohawk. These parties executed the Standard Form of Agreement Between Owner and Construction Manager (the "Construction Agreement"), which included a provision in which FBR Construction indemnified Hudson for, <u>inter alia</u>, any "act, omission, fault or neglect of Construction Manager."  The Construction Agreement incorporates

2

by reference a document called General Conditions of the
Contract for Construction, as modified in writing by the parties
("General Conditions"), which includes additional
indemnification commitments to Hudson.  Additionally, the
General Conditions define the requirements for "substantial
completion" of the project, one of which is possession of a
temporary certificate of occupancy ("TCO").

As a condition to Hudson's entering into the Construction
Agreement with FBR Construction, Jay Furman ("Furman"), FBR
Construction's sole member, delivered to Hudson an "absolute,
irrevocable, and unconditional" personal guaranty of completion
and performance ("Completion Guaranty") in exchange for a
payment of $275,000.  Under the Completion Guaranty, Furman
indemnified Hudson for certain delay damages or damages it might
"suffer by reason of having to complete the Project or having to
correct defective work . . . ."

<u>2007 State Court Actions</u>

FBR Construction obtained a TCO on April 10, 2007.
Generally, a TCO may only be renewed for two years.  Without a
TCO or permanent certificate of occupancy ("PCO"), tenants may
not occupy a building.

A serious mold condition developed at the Mohawk in 2007
that required remedial work.  In the fall of 2007, several
lawsuits were filed in state court concerning the construction

of the Mohawk.  In September, the Board of Managers of the Mohawk sued Hudson, alleging construction defects.  On May 6, 2008, all of the residents of the Mohawk (except the plaintiffs in this federal action) entered into a settlement with Hudson regarding the remediation of construction problems at the Mohawk.  On or about June 25, 2008, Hudson and FBR Construction entered into a letter agreement ("Letter Agreement") in which FBR Construction agreed, among other things, to perform the work needed to remediate those problems and to take all steps reasonably necessary to obtain a PCO.

Three more lawsuits were filed in the Fall of 2007.  In October, FBR Construction filed two suits in state court:  one against Hudson and others to enforce a lien against the Mohawk, and a second against the Mohawk's architect.  In November 2007, a third lawsuit was filed regarding the repayment of advances on a loan related to the construction of the Mohawk.  Collectively, these three pending actions are referred to as the "2007 State Court Actions."

2009 State Court Action

On or about May 6, 2009, Hudson filed suit in state court against FBR Construction, Furman and another entity seeking indemnification (the "2009 State Court Action").  The 2009 State Court Action alleges that FBR Construction's defective work at the Mohawk was to blame for the mold that developed in the

building, which required relocation of tenants and remediation
work, caused delay in completing the project, caused Hudson to
incur substantial costs in relation to the mold remediation and
other construction defects, required Hudson to pay a costly
settlement with the residential tenants of the Mohawk, and
caused other damages, including some arising under certain
financing agreements.  The 2009 State Court Action does not
mention the TCO or PCO.  On or about October 15, 2009, FBR
Construction and its co-defendants filed a third-party complaint
against eighteen parties, mostly subcontractors, for
indemnification and contribution.[1]

The Federal Action

     Michael and Meredith Carter ("the Carters") entered an
agreement to purchase a residential unit at the Mohawk on
December 23, 2004 ("the Unit").  The Carters closed on the
purchase on May 4, 2007.  Despite their ownership of a unit in
the Mohawk, the Carters did not participate in the 2007 or 2009
state court litigation or the settlement with Hudson over the
construction problems.  They eventually agreed, however, to
allow limited remedial work to be done in the Unit to address
the mold issue.

---

[1] On or about December 11, 2009, FBR Construction filed a suit in
state court against the Hudson and others to enforce an
arbitration award that declared that the Mohawk construction was
"substantially complete" (the "State Court Arbitration Action").

In or around January 2009, the TCO for the Mohawk expired.
On May 4, 2009, the Carters filed the original complaint in this
action against Hudson and others alleging common law fraud,
unjust enrichment, professional negligence, negligence, and
breach of contract, and seeking rescission, in connection with
their purchase of the Unit (the "Federal Action").  The
complaint alleged, among other things, that the construction of
the Unit did not comply with applicable building codes, which
made it dangerous and uninhabitable; and that the defendants
breached the Carters' purchase agreement by, among other things,
failing to supervise adequately the contractors and
subcontractors, allowing the building to be built in a
substandard manner and with improper materials, and failing to
take all necessary steps to obtain a PCO.

On May 20, 2009, the Carters voluntarily dismissed FBR
Construction from the Federal Action because the law firm
representing the Carters was also representing FBR Construction
in the 2007 and 2009 State Court Actions.  The Carters filed an
amended complaint on June 18, 2009, and a second amended
complaint ("SAC") on November 23, 2009, against Hudson, the
Mohawk's architects, and others.[2]  The SAC maintains its
allegations of building code violations, and adds allegations

---

[2] Defendant ADG Architecture and Design was dismissed by
stipulation on January 8, 2010.

regarding the damages the Carters suffered from January to September 2009 due to the absence of a TCO or PCO.[3]  Although the SAC makes allegations regarding the presence of mold, the Carters have explicitly waived all claims against any party relating to the mold conditions in the Mohawk.  The SAC makes no mention of FBR Construction.

On December 23, Hudson filed its third-party complaint in the Federal Action against FBR Construction and Furman.  It alleges that the damages that the Carters seek to recover in the SAC are due to the defective workmanship of FBR Construction and its subcontractors and to FBR Construction's breaches of its obligations under the Construction Agreement and Letter Agreement, including its failure to obtain in a timely manner the "boiler sign-off" needed before a TCO could be issued. Hudson alleges that Furman is liable for FBR Construction's breaches by virtue of the obligations he undertook under the Completion Guaranty.  The third-party defendants moved to dismiss the third-party complaint in the Federal Action on January 25, 2010, under the Colorado River abstention doctrine. The motion was fully submitted on March 5.

---

[3] The rescission claim does not appear in the SAC.

DISCUSSION

    A. Colorado River Abstention

    Because of the pendency of the 2007 and 2009 State Court
Actions and the State Court Arbitration Action, FBR Construction
and Furman -- the third-party defendants in the Federal Action
-- urge that the third-party action be dismissed under the
principles of abstention announced in Colorado River Water
Conservation Dist. v. United States, 424 U.S. 800 (1976). "The
abstention doctrine comprises a few extraordinary and narrow
exceptions to a federal court's duty to exercise its
jurisdiction." Woodford v. Cmty. Action Agency of Greene
County, Inc., 239 F.3d 517, 522 (2d Cir. 2001) (citation
omitted). Colorado River and its progeny "set forth the
standards governing abstention when state and federal courts
exercise concurrent jurisdiction simultaneously." Gregory v.
Daly, 243 F.3d 687, 702 (2d Cir. 2001) (citation omitted).
"These cases hold that the mere fact that parallel proceedings
are pending in state court is insufficient to justify abdicating
the 'virtually unflagging obligation' to exercise federal
jurisdiction." Id. (quoting Colorado River, 424 U.S. at 817).
"Federal and state proceedings are 'concurrent' or 'parallel'
for purposes of abstention when the two proceedings are
essentially the same; that is, there is an identity of parties,
and the issues and relief sought are the same." Nat'l Union

<u>Fire Ins. Co. v. Karp</u>, 108 F.3d 17, 22 (2d Cir. 1997).  <u>Cf.</u>
<u>Sheerbonnet, Ltd. v. Am. Exp. Bank Ltd.</u>, 17 F.3d 46, 50 (2d Cir.
1994) (proceedings where parties were not identical and that
involve "different subject matters and different forms of
relief" are not "concurrent").

A federal court may abstain "only in exceptional
circumstances, where the resolution of existing concurrent
state-court litigation could result in comprehensive disposition
of litigation."  <u>Woodford</u>, 239 F.3d at 522 (citation omitted).
When considering whether to abstain, a federal court should
consider

> (1) whether the controversy involves a res
> over which one of the courts has assumed
> jurisdiction; (2) whether the federal forum
> is less inconvenient than the other for the
> parties; (3) whether staying or dismissing
> the federal action will avoid piecemeal
> litigation; (4) the order in which the
> actions were filed, and whether proceedings
> have advanced more in one forum than in the
> other; (5) whether federal law provides the
> rule of decision; and (6) whether the state
> procedures are adequate to protect the
> plaintiff's federal rights.

<u>Id.</u> (citation omitted).  In weighing these factors, "[n]o one
factor is necessarily determinative; a carefully considered
judgment taking into account both the obligation to exercise
jurisdiction and the combination of factors counselling against
that exercise is required.  <u>Only the clearest of justifications
will warrant dismissal</u>."  <u>Moses H. Cone Mem'l Hosp. v. Mercury</u>

Constr. Corp., 460 U.S. 1, 15-16 (1983) (quoting Colorado River,
424 U.S. at 818-19).  In considering the factors, "the balance
is heavily weighted in favor of the exercise of jurisdiction.
Thus, the facial neutrality of a factor is a basis for retaining
jurisdiction, not for yielding it."  Woodford, 239 F.3d at 522
(citation omitted).  In cases based upon diversity jurisdiction,
where state law provides the rule of decision, the fifth factor
carries "little weight".  Bethlehem Contracting Co. v.
Lehrer/McGovern, Inc., 800 F.2d 325, 328 (2d Cir. 1986).  But
see Gen. Reinsurance Corp. v. Ciba-Geigy Corp., 853 F.2d 78, 82
(2d Cir. 1988).

     Only the 2009 State Court Action and the Federal Action are
sufficiently similar to trigger an examination of the Colorado
River factors.  None of the 2007 State Court Actions raises the
indemnification claims brought by Hudson against FBR
Construction here.  Indeed, Hudson did not even seek any
affirmative relief in any of those actions.  Moreover, none of
the 2007 State Court Actions raises a claim premised on the
absence of a TCO or PCO, which is at the heart of the Federal
Action.  In contrast, both the 2009 State Court Action and the
third-party action within the Federal Action include
indemnification claims brought by Hudson against FBR
Construction and Furman related to the construction of the
Mohawk.  While the issues in the 2009 State Court Action and the

Federal Action are sufficiently similar to trigger a <u>Colorado River</u> analysis, the overlap in issues is insufficient to justify a surrender of a federal court's "virtually unflagging obligation" to exercise jurisdiction.[4]  <u>Colorado River</u>, 424 U.S. at 817.

Considering the six <u>Colorado River</u> abstention factors, and keeping in mind that "neutral" factors weigh in favor of retaining jurisdiction, <u>Woodford</u>, 239 F.3d at 522 (citation omitted), it is clear that abstention is inappropriate.  There is no <u>res</u> over which either court has assumed jurisdiction and the federal and state fora are equally convenient.  Additionally, the fact that the rule of decision is provided by state law is of "little weight" in a suit premised on diversity jurisdiction.  <u>Bethlehem Contracting Co.</u>, 800 F.2d at 328.

The dislike of piecemeal litigation does not weigh in favor of dismissal of the third-party action here since the disputes in the two lawsuits are sufficiently distinct.  The Federal Action addresses the delay in 2009 in obtaining certificates of occupancy; the 2009 State Court Action does not.  Hudson

---

[4] Hudson contends that a court must abstain from exercising jurisdiction over an entire lawsuit, and may not engage in the piecemeal abstention sought by the third-party defendants. Because this Court should not abstain from exercising jurisdiction over the third-party action, it is unnecessary to address Hudson's argument that abstention could only be proper if the Court were prepared to abstain from exercising jurisdiction over the entirety of the Federal Action.

concedes that its third-party complaint in the Federal Action will be "limited to" the damages that plaintiffs seek for that delay, and it is "prepared to stipulate that it will not assert any claims relating to the Temporary Certificate of Occupancy in state court, thereby eliminating any potential for duplication [of issues]."[5]  Additionally, the Carters long ago agreed not to pursue any claim related to the mold conditions in the Mohawk, which is the principal focus of the 2009 State Court Action. These facts severely limit any overlap of issues between the 2009 State Court Action and the Federal Action.

Moreover, the third-party defendants' arguments are not sufficiently compelling to suggest that abstention is appropriate.  FBR Construction and Furman argue that, absent abstention, they will be forced to defend Hudson's indemnification claims in two courts simultaneously and implead the same seventeen defendants (largely their subconstractors) in both actions.  The extra expense and burden imposed on many parties by the multiplicity of litigation is a serious concern. But, this type of burden has long been classified as one that is

---

[5] Hudson's waiver of any claim in the 2009 State Court Action for indemnification from Furman and FBR Construction due to the delay in obtaining certificates of occupancy in 2009 renders a declaration, dated August 28th, 2009, that Hudson submitted in one of the 2007 State Court Actions irrelevant.  In that declaration, Hudson asserted that "the TCOs expired and could not be renewed because FBR failed to obtain the boiler sign-off."

"insufficient to establish exceptional circumstances justifying dismissal." Alliance of American Insurers v. Cuomo, 854 F.2d 591, 603 (2d Cir. 1988).

Next, the third-party defendants contend that the existence of parallel litigation in the two fora runs the risk of inconsistent determinations and conflicting remedies, and that retaining jurisdiction of the Federal Action would "breed additional litigation on issue and claim preclusion." The possibility of inconsistent rulings on the same indemnification agreements or underlying construction issues can be adequately addressed through application of claim preclusion principles. The burden that such secondary litigation imposes on the parties and either the federal or state court does not constitute an extraordinary circumstance warranting abstention. Indeed, "the primary context in which [the Court of Appeals has] affirmed Colorado River abstention in order to avoid piecemeal adjudication has involved lawsuits that posed a risk of inconsistent outcomes not preventable by principles of res judicata and collateral estoppel." Woodford, 239 F.3d at 524 (emphasis supplied).

The fourth Colorado River factor, the order in which the lawsuits were filed and the degree of progress in each, similarly counsels against dismissing the third-party complaint. Hudson was preparing to file the 2009 State Court Action,

brought against FBR Construction and Furman for indemnification, when it was sued by the Carters in the Federal Action in May 2009.  Prior to May 2009, the issue of indemnification had been raised only in a very limited fashion in the 2007 State Court Actions.  The parties dispute the degree to which the 2009 State Court Action has progressed, but it is clear that its resolution is not imminent; fact discovery is currently due to conclude in December 2010.  Before discovery was stayed in the Federal Action -- pending the outcome of this motion -- fact discovery was to end in May 2010.  Because the actions are equally far from resolution, this factor weighs against abstention.[6]

As for the last Colorado River factor, there is no indication that state procedures are inadequate to protect Hudson's rights.  But, given that no other factor favors abstention, this fact alone is insufficient to merit dismissal of the third-party complaint.  FBR Construction and Furman have not shown, therefore, that abstention is warranted or appropriate and that the third-party complaint filed against them in the Federal Action should be dismissed.

---

[6] To the extent that the State Court Arbitration Action pertains to issues relevant to the Federal Action, it was commenced after the Federal Action and there is no evidence that there has been any progress in that case.

B. Supplemental Jurisdiction

Alternatively, Furman and FBR Construction ask the Court to decline to exercise supplemental jurisdiction[7] over the third-party complaint pursuant to 28 U.S.C. § 1367(c)(2) or (4) because the issues in third-party complaint would predominate over those raised by the underlying complaint in the Federal Action and because the 2007 State Court Actions, the 2009 State Court Action, and the State Arbitration Action, which are being heard by a single judge, together present an exceptional circumstance.

The statute providing for supplemental jurisdiction reads in relevant part:

> § 1367. Supplemental jurisdiction
> . . . .
> (c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if--
> . . . .
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> . . . .
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

---

[7] In a footnote, the third-party defendants raise an argument regarding when joinder of a non-diverse party as a plaintiff may destroy diversity jurisdiction.  Those circumstances not being present here, there is no need to address the argument.  It is well established that, where a district court has original jurisdiction over a civil action based on diversity of citizenship, the impleader by the defendant of non-diverse third parties does not strip that court of jurisdiction.  Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 564 (2005).

28 U.S.C. § 1367.  "In providing that a district court 'may' decline to exercise such jurisdiction, this subsection is permissive rather than mandatory."  Valencia ex rel. Franco v. Lee, 316 F.3d 299, 305 (2d Cir. 2003).  Where one of the statutory factors is present, "a district court should not decline to exercise supplemental jurisdiction unless it also determines that doing so would not promote the values . . . [of] economy, convenience, fairness, and comity."  Jones v. Ford Motor Credit Co., 358 F.3d 205, 214 (2d Cir. 2004).

The issues arising from the third-party complaint do not "substantially predominate" over those implicated by the SAC. See 28 U.S.C. § 1367(c)(2).  On the contrary, retaining jurisdiction over the third-party complaint will allow for the complete disposition of the 2009 delay claims.  While the apportionment of responsibility between FBR Construction and Hudson will require the litigation of issues beyond those directly raised by the Carters' claims, such as indemnification claims, it will not call upon the Court to decide any unusually complex issues of law or to expend extraordinary resources.

Nor are there grounds for declining jurisdiction under § 1367(c)(4).  "Congress has sounded a note of caution that the bases for declining jurisdiction should be extended beyond the circumstances identified in subsections (c)(1)-(3) only if the circumstances are quite unusual.  In other words, declining

jurisdiction outside the ambit of 1367(c)(1)-(3) appears as the exception rather than the rule." Itar-Tass Russian News Agency v. Russian Kurier, Inc., 140 F.3d 442, 448 (2d Cir. 1998) (citation omitted). The third-party defendants have offered the same justifications for declining jurisdiction under this provision as they did for abstaining under Colorado River. As was the case with that argument, declining jurisdiction for those reasons is inappropriate.[8]

CONCLUSION

The January 25, 2010 motion by FBR Construction Group LLC and Jay Furman to dismiss is denied.


SO ORDERED:

Dated:    New York, New York
          June 17, 2010


                                    DENISE COTE
                              United States District Judge


---

[8] Given that the motion to dismiss is denied, it is unnecessary to reach the motion brought by Furman and FBR Construction for attorneys' fees.

17